IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TERRENCE T. MILAN,           )
                             )
        Plaintiff,           )
                             )
    v.                       )   No. 12 C 5621
                             )
CITY OF CHICAGO, et al.,     )
                             )
        Defendants.          )

# MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' partial motion for summary judgment. For the reasons stated below, the partial motion for summary judgment is granted, and the remaining state law claims are dismissed without prejudice.

# BACKGROUND

Plaintiff Terrence T. Milan (Milan) alleges that in September 2010, he was employed as a security guard for Reliance Security & Consulting Services (Reliance). Milan contends that on September 9, 2010, he picked up two friends in a vehicle (Vehicle) he borrowed from his girlfriend. At that time, Defendant Daniel Marcus (Marcus), Defendant Michael Salyers (Salyers), Defendant Michael Jolliff-Blake (Blake), Defendant Jesse W. Belcher (Belcher), Defendant James D. Cascone

(Cascone), Defendant Nelson Lopez (Lopez), Defendant T. Czerniawski (Czerniawski), Defendant W. Hanson (Hanson), and Defendant B.K. Scanlan (Scanlan) (collectively referred to as "Arresting Officers") were employed as police officers for Defendant City of Chicago (City) and were part of a Mobile Strike Force. At approximately 10:45 p.m., Arresting Officers allegedly pulled over the Vehicle in the City. Arresting Officers allegedly ordered the occupants of the Vehicle to exit the Vehicle, handcuffed the occupants, and searched the Vehicle and its occupants. Arresting Officers also allegedly questioned Milan, who had been driving the vehicle, and discovered that Milan had been driving on a suspended license.

Milan contends that Arresting Officers found certain identification materials and his gun in the Vehicle. Milan contends that he was handled roughly during his arrest, and was chained to a wall for hours at the police station. In addition, the Vehicle was impounded by the City. Milan also contends that Marcus and Salyers prepared an arrest report with false statements with input from Defendant Robert W. Hartmann (Hartmann). Defendant Richard Aguinaga (Aguinaga) and Defendant M.J. Gallagher (Gallagher) allegedly approved the arrest report and the preparation of weapons charges against Milan. Felony weapons charges were allegedly brought against Milan and at a bench trial Milan was allegedly found not-guilty on such charges.

Milan filed the instant action and includes in his complaint claims brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging an illegal traffic stop, seizure, and arrest brought against Arresting Officers (Count I), Section 1983 claims alleging

an unconstitutional search and seizure of Milan's person and the Vehicle brought against Arresting Officers (Count II), Section 1983 claims alleging an unconstitutional seizure of his property brought against Marcus and Salyers (Count III), Section 1983 excessive force claims brought against Marcus and Salyers (Count IV), Section 1983 unlawful detention claims brought against Marcus, Salyers, Hartmann, Aguinaga, and Gallagher (Count V), Section 1983 failure-to-intervene claims brought against all Defendants (Count VI), Section 1983 fraud perpetuating a seizure claims brought against Marcus and Salyers (Count VII), state law malicious prosecution claims brought against Marcus, Salyers, Cascone, Hartmann, Aguinaga, and Gallagher (Count VIII), state law intentional infliction of emotional distress claims brought against Marcus and Salyers (Count IX), and a state law indemnification claim brought against the City (Count X). Defendants now move for summary judgment on the claims in Counts I-VII.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue

of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

I. Voluntarily Dismissed Claims

In response to the instant motion for summary judgment, Milan agrees to dismiss the following claims: (1) all claims brought against Czerniawski, (2) all claims brought against Blake, (3) all Section 1983 illegal traffic stop, seizure, and arrest claims in Count I, (4) all Section 1983 unconstitutional search and seizure claims in Count II, and (5) all Section 1983 fraud perpetuating a seizure claims in Count VII. (Ans. SJ 1-2). All such claims are therefore dismissed. Therefore, Milan's remaining claims are the claims included in Counts III, IV, V, VI, VIII, IX, and X, that are brought against all Defendants except Czerniawski and Blake.

II. Seizure of Property Claims (Count III)

Defendants contend that Milan has failed to point to sufficient evidence to

support his Section 1983 seizure of property claims in Count III. The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Christensen v. County of Boone, IL*, 483 F.3d 454, 459 (7th Cir. 2007)(internal quotations omitted)(stating in addition that "[o]nly government activity that constitutes either a 'search' or a 'seizure' is regulated by the Fourth Amendment"). Milan contends that Marcus' and Salyers' continued seizure of Milan's gun, security guard license, and credentials was arbitrary, unreasonable, and without legal cause, and violated Milan's Second and Fourth Amendment rights. (Compl. Par. 42-43).

In the instant action, it is undisputed that on the night of Milan's arrest, Arresting Officers had been deployed to patrol an area that police intelligence had indicated would be the site of a delivery of a firearm for use in a shooting. (SAF Par. 9). It is also undisputed that Marcus and Salyers observed Milan driving the Vehicle with tinted windows, no front license plate, and items hanging from the rear view mirror. (R SF Par. 17-18). Milan has not disputed, in response to the instant motion, that such conditions with the Vehicle violated Illinois law. It is further undisputed that Marcus and Salyers discovered that Milan had been driving on a suspended driver's license. (R SF Par. 22). Although Milan disagrees as to whether he was asked about his driver's license before or after the search of the Vehicle, Count III relates solely to an alleged illegal seizure and Milan has indicated that he is no longer pursuing his illegal search claims in this case. Milan does admit that he "did not have a valid driver's license at the time of the stop." (R SF Par. 22). Thus, it is

5

undisputed that at that juncture Marcus and Salyers had discovered Milan had broken various state traffic laws, including driving without a valid driver's license. Milan also admits that Defendants had the right to take Milan into custody. (Ans. SJ 10). Since Marcus and Salyers had a valid basis to take Milan into custody, they also could impound his Vehicle and conduct an inventory search and seizure of property in the Vehicle. *United States v. Cherry*, 436 F.3d 769, 772-73 (7th Cir. 2006)(referring to the "inventory search and seizure"); *United States v. Cartwright*, 630 F.3d 610, 614 (7th Cir. 2010)(explaining that "[a]n inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures").

Regardless of the sequence of events at Milan's arrest, which he disputes, his gun and identification materials ultimately were properly withheld from his possession as part of the inventory search and seizure process. Milan has not pointed to evidence showing that Defendants failed to follow proper inventory procedures or that Defendants acted unreasonably in regards to the search of the Vehicle. Milan also argues that his gun was legally placed in the Vehicle in a locked storage compartment. (R SF Par. 27). However, regardless of the legality of keeping the gun in the Vehicle, that would not prevent such personal property from being seized as part of the inventory seizure process when Milan was arrested. Milan has not pointed to evidence to show that any possession of such personal property by Defendants violated his constitutional rights. Therefore, Defendants' motion for

summary judgment on the Section 1983 seizure of property claims in Count III is granted.

III. Excessive Force Claims (Count IV)

Defendants contend that Milan has failed to point to sufficient evidence to support his Section 1983 excessive force claims in Count IV. When a police officer executes an arrest, "the Fourth Amendment prohibits him from employing greater force than [is] reasonably necessary to make the arrest." *Abbott v. Sangamon, County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013)(internal quotations omitted)(quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)); *see also Stainback v. Dixon*, 569 F.3d 767, 771-72 (7th Cir. 2009)(stating that "[t]he Fourth Amendment's reasonableness standard governs [the] evaluation of a plaintiff's claim that law-enforcement officers employed excessive force during an arrest, an investigatory stop or any other type of seizure"). Milan contends that Marcus and Salyers engaged in "rough handling" of Milan and handcuffed him "for several hours." (Compl. Par. 45). Milan also contends that Marcus and Salyers threatened Milan with guns, and that Marcus and Salyers "mentally abused [Milan] through false allegations of womanizing." (Ans. SJ 19).

As to alleged "rough handling" in response to the instant motion for summary judgment, Milan points to no evidence of violent or excessive force on the person of Milan. In regard to the handcuffing, the undisputed facts show that the handcuffing was part of the ordinary course of taking Milan into custody and detaining him at the

7

police station. Milan does not allege any extraordinary hardships relating to the handcuffs such as that they were too tight or caused him any significant discomfort or pain. As to the allegations relating to womanizing, even when construing the evidence in a light most favorable to Milan, such evidence fails to indicate any type of "mental abuse" as Milan claims, that could rise to the level of excessive force in the Fourth Amendment context. (Ans. SJ 19).

In regard to Milan's claim that he was "threatened with officers' guns at the scene and in the station," Milan failed to point to evidence to support his claims. (Ans. SJ 19). Milan's version of events relating to the alleged threat with "guns" has shifted throughout this litigation. In the complaint, there was no mention by Milan of threats by Defendants with guns. In Milan's deposition, Milan testified that Arresting Officers had guns when they executed the traffic stop of the Vehicle. (Milan Dep. 151). Milan also testified that when Salyers was holding Milan's gun at the police station, it was for a moment pointed at Milan. (Milan Dep. 182). Milan did not indicate, however, that Salyers was intentionally pointing the gun at Milan or that he was doing so in a threatening manner. Milan testified that Salyers was carving on the butt of Milan's gun when it happened to be pointed at Milan and Milan complained to Salyers about it. (Milan Dep. 182-183). Subsequently, Milan filed an affidavit in which he claimed that it was Marcus, not Salyers, who picked up Milan's gun and that he "pointed it at [Milan's] head," before carving on the gun. (Milan Aff. Par. 29). Subsequently, in Milan's opposition to the instant motion, Milan asserted that he was "threatened with officers' guns at the scene and in the

8

station." (Ans. SJ 19).

Milan however fails to point to evidence showing any threat at the scene of the arrest. The mere fact that Arresting Officers had weapons did not constitute a threat, and the undisputed facts show that at the time of the arrest, Arresting Officers were patrolling to try and detain a vehicle containing an illegal firearm from being transported for use in a shooting. (SAF Par. 9). Under circumstances where Arresting Officers were patrolling in search of an armed suspect at night, and pulled over a vehicle with tinted windows, and various traffic violations, Arresting Officers were entirely justified in being armed to execute that traffic stop. Milan also admitted at his deposition that none of the guns were ever pointed at him. (Milan Dep. 151).

As to the allegations that some of Defendants threatened Milan with a gun at the station, Milan has not produced evidence that would indicate any type of intentional threat on the part of Marcus or Salyers. Milan's deposition testimony was not ambiguous or confusing and Milan offers no explanation for the change in his story in his affidavit. *See Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012)(stating that "a party cannot create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony" unless the "deposition testimony was . . . ambiguous or confusing")(internal quotations omitted)(quoting *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996)). Milan's testimony, if accepted as accurate at this stage of the proceedings, at most indicates that his own gun may have unintentionally been pointed at Milan

while Salyers carved on the butt of the gun. Therefore, based on the above, Defendants' motion for summary judgment on the excessive force claims (Count IV) is granted.

IV. Unlawful Detention Claims (Count V)

Defendants contend that Milan has failed to point to sufficient evidence to support his Section 1983 unlawful detention claims. An individual who is arrested can be detained by police for a reasonable amount of time, and such time is not deemed reasonable if there was an "improper purpose for the delay. . . ." *Chortek v. City of Milwaukee*, 356 F.3d 740, 747-48 (7th Cir. 2004). Milan indicates that he does not dispute that Defendants had probable cause to take him into custody. Milan contends that his unlawful detention claim is based on the alleged extraordinary length of time of his detention. (Ans. SJ 10). Milan references situations where there is a "misdemeanor traffic violator" and "minor, garden variety offenses." (Ans. SJ 10). However, at the time of Milan's arrest, Arresting Officers were looking for an armed suspect in the area where Milan was arrested. In addition, even if Arresting Officers had concluded that Milan was not that suspect, Arresting Officers had reason to detain Milan for a sufficient period of time. This case does not involve a situation where Milan was simply pulled over for speeding and then detained. The combination of circumstances in this case that are undisputed by Milan show that the period of detention was necessary to ensure the public's safety. It is undisputed that Arresting Officers discovered that Milan was driving without a valid license in a

10

vehicle with tinted windows that contained a gun. The undisputed facts show that Milan's arrest was not an ordinary traffic stop involving a "garden variety offense." (Ans. SJ 10). Defendants were not obligated to simply accept Milan's explanations at face value, accept his "status as a security guard," and assume that his security guard credentials were legitimate. (Ans. SJ 9). Milan claims that as a security guard he had a one-hour safe harbor period to carry a weapon anywhere, but Defendants were justified in attempting to verify such information prior to releasing Milan. Defendants had ample reason to take Milan into custody and ensure that he was not a threat to public safety before releasing him. It is undisputed that Milan was detained for a period of thirty-eight hours. (R SAF Par. 32). However, Milan has not pointed to sufficient evidence other than his own personal opinion, that shows that period to be excessive in light of the undisputed facts and the circumstances in this case. There is an absence of evidence showing that Defendants purposefully and unreasonably delayed Milan's period of detention. For example, it is undisputed that Hartmann was given the task of verifying Milan's claim to be working as a security guard. (R SF Par. 40). It is also undisputed that when Hartmann went to Milan's former employer, his former employer was unable to verify Milan's current employment status. (R SF Par. 41). It is also undisputed that when Hartmann inquired with Reliance, which Milan said was his current employer, Hartmann was told that Reliance was no longer a security company. (R SF Par. 41). While Milan claims that Hartman was falsely informed that Reliance was no longer a security company, that did not change the fact that Hartmann's investigation was justifiably

11

extended beyond his initial inquiries based on the responses that he received. (R SF Par. 41). The extended investigation in turn justified a further detention of Milan. As to Milan's charge for unlawful use of a weapon, although Milan was ultimately acquitted in a bench trial, Milan has not shown that Defendants' pursuit of the charge and investigation of the charge were unreasonable. Therefore, Defendants' motion for summary judgment on the unlawful detention claims (Count V) is granted.

V. Failure-to-intervene Claims (Count VI)

Defendants contend that Milan has failed to point to sufficient evidence to support his Section 1983 failure-to-intervene claims. For a Section 1983 failure-to-intervene claim, a plaintiff must establish: (1) that an officer was "informed of the facts that establish a constitutional violation," and (2) that the officer had "the ability to prevent it. . . ." *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008)(internal quotations omitted)(quoting *Morfin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003)). In the instant action, as explained above, Milan has not pointed to sufficient evidence to show that Defendants violated any of his constitutional rights, which defeats his failure-to-intervene claim. In addition, Milan has pointed to no instance where any Defendant could have intervened. For example, Milan contends that his gun was pointed at him for only a moment. Such evidence would not indicate any ability by other officers to intervene. Therefore, Defendants' motion for summary judgment on the unlawful detention claims (Count V) is granted.

## VI. Qualified Immunity

Defendants also contend that they cannot be found liable based on their qualified immunity. A police officer is free from liability under his qualified immunity protection "if a reasonable officer could have believed that the action taken was lawful, in light of clearly established law and the information the officer possessed at the time." *Phillips v. Community Ins. Corp.*, 678 F.3d 513, 527-28 (7th Cir. 2012)(stating that "[i]n determining whether a right is 'clearly established," the court "look[s] first to controlling precedent on the issue from the Supreme Court and from this circuit")(internal quotations omitted)(quoting *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010)). In the instant action, even if Milan had pointed to sufficient evidence of a constitutional violation, which he did not, Defendants have shown that they would not be liable based on their qualified immunity.

## VII. Remaining State Law Claims

Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479
13

F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, "in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. The instant action is still in the pre-trial stage and there is not sufficient justification to proceed solely on the remaining state law claims. The remaining state law claims in Counts VIII, IX, and X are therefore dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, Defendants' partial motion for summary judgment is granted, and the remaining state law claims in Counts VIII, IX, and X are dismissed without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 3, 2013